Upon review of all the competent evidence of record with reference to the errors assigned, and finding good grounds to reconsider the evidence and to receive further evidence, the Full Commission MODIFIES IN PART and AFFIRMS IN PART the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as facts and concludes as matter of law the following which were entered into by the parties in an executed pre-trial agreement as:
 STIPULATIONS
1. It is stipulated that all parties are properly before the Commission and that the Commission has jurisdiction of the parties and of the subject matter.
2. It is stipulated that all parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. It is stipulated that the appointment of any party who appears in a representative capacity is valid and that said party has duly qualified and has authority to appear in the capacity in which said party is designated, and that no additional proof of appointment or capacity shall be required.
4. In addition to other stipulations contained herein, the parties stipulate and agree with respect to the following undisputed facts:
 (a) An employee-employer relationship existed between the plaintiff and defendant/employer December 31, 1987.
 (b) The parties are subject to, and bound by the provisions of the North Carolina Workers' Compensation Act.
 (c) Insurance coverage is provided by Wausau Insurance Company, defendant/carrier.
 (d) The plaintiff sustained a compensable injury on December 31, 1987.
 (e) Compensation was paid for a period of 119 3/7 weeks in a total amount of $18,835.86.
 (f) An I.C. Form 24 was filed by the defendants on or about November 5, 1991.
 (g) A Response was filed by the employee/plaintiff on or about November 19, 1991.
 (h) A Form 24 was approved by Martha Barr on December 3, 1991.
 (i) Employee/plaintiff filed a Motion for Hearing and Taking of Deposition of Dr. Richard W. Adams on December 12, 1991.
 (j) Notice for the taking of the deposition of Dr. Richard Adams was filed on June 1, 1992 and for the taking of the deposition of Dr. Richard Adams on July 1, 1992.
 (k) The deposition of Dr. Richard W. Adams was taken on July 1, 1992.
5. The parties stipulate and agree that the following medical records may be accepted by the Industrial Commission; however, the parties reserved the right to depose any or all of these health care providers.
 Transcript of deposition of Dr. Richard W. Adams to be taken on July 1, 1992.
6. Issues to be determined:
 (a) Whether the plaintiff is entitled to any compensation, other than that previously paid.
 (b) What additional compensation, if any, is the plaintiff entitled to receive?
7. The defendants' contentions as to disputed issues are as follows:
 (a) The defendants contend that the plaintiff has failed to cooperate with a return to suitable work and has failed to cooperate with requested medical evaluations and treatment, despite numerous requests by the defendants and orders of the Industrial Commission. The defendants contend that the plaintiff's cooperation with further medical evaluations and treatment and an appropriate return to work situation are conditions precedent to any further review and consideration of the issues by the Industrial Commission and they would object to any further review of these matters at this time.
 (b) The defendants contend that correspondence between counsel, the parties and the Commission relating to these issues is relevant and may be offered into evidence in this case.
 *********
Based upon the competent evidence of record herein, the Full Commission adopts in part and modifies in part the Findings of Fact of the deputy commissioner and finds as follows:
 FINDINGS OF FACT
1. On December 31, 1987, plaintiff, an employee in defendant-employer's produce department, sustained a compensable injury to her back while lifting a 50-pound crate of cabbage. The parties entered into an I.C. Form 21 agreement on February 22, 1988 reflecting that plaintiff had an average weekly wage of $236.00 per week, yielding a compensation rate of $157.34 per week.
2. On March 22, 1991, former Deputy Commissioner Roger L. Dillard, Jr. filed an Opinion and Award in which he concluded that an automobile accident in which plaintiff was involved on October 22, 1988 was not a significant contributing factor to, or a significant contributing cause of, plaintiff's back problem which caused her to be out of work in June, 1989, and, thereafter, continuously since October 5, 1989. Deputy Commissioner Dillard awarded plaintiff compensation for temporary total disability at the rate of $157.34 per week for the periods June 25, 1989 until September 9, 1989 and October 5, 1989 through August 20, 1990. He further directed the payment of similar compensation until defendants obtained the Commission's permission to cease payments or until plaintiff sustained a change of condition or returned to work. Payment of medical expenses resulting from the injury were also awarded.
3. The parties stipulated in the pre-trial agreement that plaintiff has been paid compensation for temporary total disability for a period of 119 and 3/7 weeks, totaling $18,835.86.
4. On June 13, 1991, defendants filed an I.C. Form 24 application to stop payment of compensation on the grounds that plaintiff had refused suitable medical treatment and suitable work. The application was denied in the absence of supporting medical evidence.
5. On August 16, 1991 defendants filed an I.C. Form 33 request for hearing on the grounds that plaintiff allegedly refused to cooperate with medical treatment and rehabilitation efforts and refused to return to work.
6. On November 8, 1991 defendants again filed an I.C. Form 24 alleging that plaintiff had been advised by a physician that she was able to work and that a job had been made available to her within medical guidelines; and, that plaintiff had not complied with a Commission order for medical treatment. This I.C. Form 24 was approved by the Commission December 8, 1991.
7. On December 12, 1991 plaintiff filed a motion requesting a hearing before a deputy commissioner. A hearing was set for March 5, 1992 which was continued until July 14, 1992 and then continued again.
8. On July 1, 1992 the parties deposed Dr. Richard W. Adams, an orthopedic surgeon. The transcript and accompanying medical records are of record herein.
9. When Dr. Adams was asked whether plaintiff could perform enumerated duties as a check-out person in defendant-employer's supermarket, he stated only that there would be days in which she could possibly do it and days when she could not do it; but that she could not do it on a regular basis. Dr. Adams opined that plaintiff could be re-trained for some type of light-duty, clerical type work, and that if she doesn't retrain, her condition is going to deteriorate just from inactivity and the depression that would ensue. It was Dr. Adams' opinion that plaintiff has been depressed since 1991, and that she would benefit from treatment by a qualified psychiatrist as well as physical therapy after vocational rehabilitation.
10. Following the filing of Deputy Commissioner Dillard's award of March 22, 1991, and even after the hearing of August 20, 1990 and Dr. Adams' previous deposition of October 18, 1990, plaintiff continued under the regular and frequent care of Dr. Adams. She saw him October 23, 1990, January 14, 1991, March 12, 1991, April 9, 1991, April 15, 1991 and July 16, 1991, twice in August, and three times in October and November, 1991 and in February, March, and May, 1992. In October, 1990 she was having continuous pain in her lower back and legs, and in the upper back radiating into her chest, along with paresthesias (tingling) in her legs coming from nerve root irritation. An MRI was scheduled for March 14, 1991, which revealed disk problems at L3-L4 and L4-L5 of the lumbar spine — mild disk protrusions. Dr. Adams could not say to a reasonable degree of medical certainty whether the degenerative changes discovered had developed, or were the result of her 1987 injury or were aggravated by it.
11. In April 1991, plaintiff was complaining of generalized aching and pain all over her back, joints, and extremities. Dr. Adams continued her on a variety of pain and anti-inflammatory medications.
12. In January, 1992 plaintiff was seen by Dr. David S. Caldwell of Duke University Medical Center. The MRI taken there did not reveal any evidence of herniated discs. Dr. Caldwell thought plaintiff had developed fibromyositis, an inflammation in the muscles that follows almost any type of underlying painful disorder. There is a difference of opinion in the medical community on whether fibromyositis is a specific condition or ailment.
13. At the time of his July 1, 1992 deposition, Dr. Adams believed that there was nothing further diagnostically that he could do for plaintiff, and there was nothing surgery could help. Plaintiff's complaints were subjective and there were no good objective things for him to monitor. She would have to be treated symptomatically (i.e., conservatively) from that point on.
14. In light of plaintiff's physical condition in the months preceding June, 1991; the requirements of the job of cashier/checkout operator that was then offered; and her treating physician's opinion that she could not do this work on a regular basis, plaintiff was justified in refusing the employment offered her by defendant employer on June 10, 1991.
15. On the other hand, there is no evidence to support a conclusion that plaintiff was justified in refusing the medical treatment requested by defendants in July and August, 1991. As far as the record shows, this refusal was occasioned solely by her counsel's refusal to permit plaintiff to cooperate with a rehabilitation nurse because of his personal opinion about the proper role of such nurses, and, later, because of his personal antipathy to Dr. Andrea Stutesman, whom defendants had unsuccessfully arranged for plaintiff to see twice; (see,e.g., plaintiff's motion of August 5, 1991, denied by the Executive Secretary of the Commission August 19, 1991; letter to, Chairman Booker from Attorney Smith dated August 15, 1991; and letter to Jo Ann Hartley, the rehabilitation consultant, from Attorney Smith dated September 9, 1991).
16. Plaintiff refused to cooperate with the IME scheduled with Dr. Andre A. Stutesman on August 19, 1991. Plaintiff filed a motion with the Industrial Commission objecting to the IME by Dr. Stutesman on August 15, 1991. Plaintiff's motion was denied by the Executive Secretary on August 19, 1991. Defendants terminated plaintiff's temporary total disability compensation on October 30, 1991 and filed an I.C. Form 24 Application to Stop Payment on November 8, 1991 which was approved by the Industrial Commission on December 3, 1991. Plaintiff's failure to undergo the IME requested by defendants justified suspension of benefits during the period of plaintiff's refusal to cooperate. Plaintiff's refusal to cooperate ended on December 15, 1994 when she cooperated with the IME ordered by the Industrial Commission.
17. An Interlocutory Order was filed by the Full Commission on June 24, 1994, ordering plaintiff to submit to an independent medical examination at defendant's expense. The issue of what amount of additional compensation plaintiff was entitled to, if any, was reserved for subsequent determination by the Industrial Commission. The record was reopened pending receipt of additional medical evidence. Said Interlocutory Order is included herein by reference. A report by Dr. Adrian M. Griffin, dated April 30, 1995, and reports and records of Dr. Richard W. Adams, dated May 24, 1995 through January 8, 1998, have been submitted by stipulation for the Commission to review.
18. Pursuant to the Order of the Industrial Commission, the Industrial Commission's nurse made an appointment for plaintiff to undergo an IME by Dr. William Hardaker at Duke University Medical Center on December 15, 1994. Plaintiff cooperated with the ordered IME. Dr. Hardaker's report, dated March 2, 1995, noted minimal asymmetric disc bulges at L4-L5 and L5-S1, but no compression of the spinal cord or the nerve roots from intrinsic or extrinsic lesions. Surgical intervention was not recommended, but he did recommend that plaintiff be referred to a pain clinic for further evaluation.
19. Plaintiff was subsequently evaluated and admitted to the Rehabilitation Center on October 9, 1995. Plaintiff left the program and went home on the second day due to complaints of increased pain. In April, 1996 plaintiff returned to the Rehabilitation Center and was re-evaluated. Dr. Carlton recommended that plaintiff be readmitted, but she refused.
20. Defendants were obligated to resume plaintiff's temporary total disability compensation when her refusal to cooperate with the medical evaluation ended on December 15, 1994.
21. Plaintiff again refused to cooperate with recommended medical treatment in April 1996 when she refused admission to the Rehabilitation Center as recommended by Dr. Carlton. No order of the Industrial Commission has been requested or entered by the Industrial Commission ordering plaintiff to undergo medical treatment by the Rehabilitation Center as is required before suspension of benefits under N.C. Gen. Stat. § 97-25.
22. Dr. Adrian M. Griffin's psychiatric evaluation of April 30, 1995 diagnosed plaintiff as suffering from depression, but not a major depressive disorder with a resulting diagnosis of "Depressive Disorder, Not Otherwise Specified" and Chronic Pain Syndrome. He concluded that plaintiff's prognosis was "Poor, by history."
23. Defendants are now requesting a multi-disciplinary evaluation of plaintiff which is reasonable in light of the time that has transpired since plaintiff's last evaluation.
 *********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Since December 31, 1987, plaintiff has been temporarily totally disabled as a result of her admittedly compensable injury. N.C. Gen. Stat. § 97-29.
2. Defendants have not established sufficient grounds to terminate plaintiff's compensation for temporary total disability under N.C. Gen. Stat. § 97-32.
3. Defendants properly suspended payment of compensation for temporary total disability to plaintiff from October 31, 1991 until her refusal to cooperate with the Independent Medical Examination requested by defendants ended. Plaintiff's refusal ended when she complied with the Order to undergo an Independent Medical Examination arranged by the Industrial Commission's nurse on December 15, 1994. N.C. Gen. Stat. § 97-27.
4. Plaintiff is entitled to a presumption of continuing disability pursuant to the I.C. Form 21. Defendants have not produced evidence showing plaintiff has wage-earning capacity. Plaintiff is entitled to continuing temporary total disability compensation of $157.34 per week from the date her suspension of compensation ended on December 15, 1994 and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
5. Plaintiff's depression disorder is causally related to her compensable injury.
6. Plaintiff is entitled to all medical treatment reasonably required as a result of her compensable injury, including such future medical expenses as are reasonably required to afford her relief from the injury, including any psychiatric treatment reasonably related to her injury. While her depressed state has been shown to result from the disability occasioned by her compensable injury, no such showing has been made with respect to her fibromyositis or suspected reflex sympathetic dystrophy, and defendants are not liable for treatment of these conditions in the absence of such a showing, even if such treatment affords her relief. N.C. Gen. Stat. § 97-25.
 *********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff continuing temporary total disability compensation of $157.34 per week from December 15, 1994 through the date of this Opinion and Award and continuing until further order of the Industrial Commission.
2. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under paragraph one of this Award is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent of the lump sum due plaintiff under this Award, shall be deducted from the sum to be paid the plaintiff and shall be paid directly to plaintiff's counsel; and, thereafter, plaintiff's counsel shall directly receive 25% of each week's disability compensation due the plaintiff.
3. Defendants shall pay expenses incurred or to be incurred in the future for medical treatment resulting from plaintiff's compensable injury for so long as such treatment may be reasonably required to afford her relief from her injury when the bills for same have been submitted and approved through the procedures adopted by the Industrial Commission.
4. Defendants shall pay the costs, including an expert witness fee of $400.00 to Dr. Richard W. Adams.
 ********* ORDER
It is HEREBY ORDERED that plaintiff shall cooperate with all reasonable medical treatment and vocational rehabilitation recommended by defendants or be subject to further suspension of compensation.
 S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ________________ J. HOWARD BUNN, JR. CHAIRMAN
_______________ GREGORY WILLIS DEPUTY COMMISSIONER
[Deputy Commissioner Gregory Willis has left employment with the Industrial Commission; consequently, this Opinion and Award is entered with two signatures.]